**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JANE DOE and JANE ROE,

                       Plaintiffs,                1:20-cv-01195 (BKS/CFH)

v.

THE NYS OFFICE OF CHILDREN AND FAMILY
SERVICES, TABERG RESIDENTIAL CENTER FOR
GIRLS, "JOHN" MONTANA, "JOHN" DIEGO, "JOHN"
MURPHY, "JOHN" AIELLO, "JOHN" SMITH, and
JOHN and JANE DOES 1–5,

                       Defendants.

---

**Appearances:**

*For Plaintiffs:*
Vik Pawar
Pawar Law Group P.C.
20 Vesey Street, Suite 1410
New York, New York 10007

*For Defendants New York State Office of Children and Family Services, Montana, Murphy, Aiello, and Smith:*
Letitia James
Attorney General for the State of New York
Shannan C. Krasnokutski
Assistant Attorney General
The Capitol
Albany, New York 12224

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

Plaintiffs Jane Doe and Jane Roe bring this action against the New York State Office of Children and Family Services ("OCFS") and Taberg Residential Center for Girls, as well as Montana, Diego, Murphy, Aiello, Smith, and five John and Jane Doe defendants.[1] (*See generally* Dkt. No. 1). Plaintiffs allege the following federal claims under 42 U.S.C. § 1983: First Amendment retaliation, Fourteenth Amendment substantive due process, Fourth Amendment unreasonable seizure and excessive force, Fourteenth Amendment equal protection, supervisory liability, and failure to intervene. (Dkt. No. 1). Plaintiffs also allege state law claims, including: assault and battery, harassment, intentional and negligent infliction of emotional distress, violations of the New York Constitution, New York Civil Rights Law, and New York Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 296(1), (6), negligent screening, training, hiring and retention, negligence, and respondeat superior. (*Id.*). Defendants OCFS, Montana, Murphy, Aiello, and Smith[2] move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) and for partial summary judgment under Rule 56 on the ground that Plaintiff D.B.'s claims were filed after the statute of limitations expired. (Dkt. No. 13). Plaintiffs oppose Defendants' motion and cross-move under Rule 15 to file an amended complaint. (Dkt. No. 21). For the reasons that follow, the parties' motions are granted in part and denied in part.

---

[1] As the proposed amended complaint substitutes D.B. and C.P. for Plaintiffs "Jane Doe" and "Jane Roe," (Dkt. No. 21-1, at 1), going forward, the Court refers to Plaintiffs as D.B. and C.P. and directs the Clerk of the Court to amend the caption accordingly. In addition, the proposed amended complaint provides the first names for Defendants Montana, Murphy, Aiello, and Smith, and names Sussana Tillino as a Defendant.

[2] Taberg Residential Center for Girls and "John" Diego have not appeared in this action. Plaintiffs have been unable to locate, and therefore have not served, Diego. (Dkt. No. 21-2, at 6 n.1).

## II.    FACTS[3]

Taberg Residential Center for Girls is a "limited secure facility," where "juveniles can be placed pursuant to order of" New York Courts. (Dkt. No. 21-1, ¶ 15). Taberg "offers various services to juvenile girls in all areas from counseling to medical and mental health services." (*Id.* ¶ 18). Defendants Sussana Tillino, Michael Montana, Jamie Murphy, Joseph Aiello, and Ryan Smith were employed by Taberg while Plaintiffs were residents there. (*Id.* ¶¶ 21–24). Tillino "was the site director at Taberg and responsible for the supervision of the staff at Taberg." (*Id.* ¶ 25). Montana, Murphy, Aiello, and Smith held the job titles of "Youth Div. Aide," "correctional or security officers, juvenile counselors, [or] mentors." (*Id.* ¶¶ 33, 38).

Plaintiffs D.B. and C.P., who were "considered 'juvenile delinquents,'" were placed at Taberg by New York Courts "working in conjunction with" OCFS. (*Id.* ¶¶ 12, 31). D.B., born in 1998, was a "juvenile resident" at Taberg from July 2014 to October 2015—age 15 to 16.[4] (*Id.* ¶¶ 27–28). C.P., born in 2000, was a "juvenile resident" "on various occasions" from January 2014 to October 2018—age 13 to 17. (*Id.* ¶¶ 28–30). Upon placement at Taberg, D.B. and CP were "admonished that . . . they were expected to abide by the rules and regulations, and that they were subject to punishment of various degrees if they did not adhere thereto." (*Id.* ¶ 32).

### A.    Defendant Michael Montana

Montana, who wore a uniform and carried metal handcuffs, a radio, state identification, and a flashlight, was a "mentor" or "Youth Div. Aide" at Taberg. (Dkt. No. 21-1, ¶¶ 38, 50).

---

[3] The facts are drawn from the proposed Amended Complaint. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). Defendants also move for partial summary judgment and have submitted several documents in support of their motion but the Court, for the reasons stated *infra* Section IV.B.1., has not considered those documents and has confined its review to the complaint and proposed amended complaint.

[4] Since her date of birth is in a document extraneous to the complaint, and not properly before the Court, and in order to afford D.B. every benefit of the doubt, the Court utilizes the latest possible date on which D.B. could have been born in 1998—December 31, 1998. The Court likewise utilizes December 31, 2000 for C.P.

Montana "use[d] his influence to groom both plaintiffs and then use[d] that same power to physically and sexually abuse them." (*Id.* ¶ 41). Montana "purchase[d] contraband and other items for plaintiff to gain their compliance with his sexual demands." (*Id.* ¶ 44). These items included outside food from McDonald's or Subway or Chinese restaurants, which "was not otherwise permitted or available" to residents, as well as soaps, sponges, mp3 players, "[f]uzzy" pillows, and comforters. (*Id.* ¶ 44).

Montana engaged in unprotected sex with D.B. and C.P. and had "sex with the plaintiffs whenever the opportunity arose." (*Id.* ¶¶ 46, 49). Montana would "push a big chair against the door so to prevent others entry to the places where the sexual encounters were taking place." (*Id.* ¶ 55). When Plaintiffs voiced concern about unprotected sex or STDs, Montana would "boast that he [was] clean," ask about birth-control, and "warn them that they 'better not get pregnant.'" (*Id.* ¶¶ 47–48). Montana "would take off his uniform wearing only his white undershirt when he was engaged in sexual contact with the plaintiffs" and would "put his hands over" Plaintiffs' mouths "to silence the noise or prevent them from screaming" during sex. (*Id.* ¶¶ 51, 53). In addition to engaging in sexual intercourse, Montana would direct Plaintiffs to pose nude while he pleasured himself and gave Plaintiffs "'nickies': hickies that Montana would plant on their faces, shoulders, arms and necks." (*Id.* ¶¶ 56, 61). Following sexual encounters, Montana "would . . . squeeze handcuffs tighter on plaintiffs as if they were at fault for [the] sexual encounter." (*Id.* ¶ 64). The physical and sexual assaults were violent, leaving Plaintiffs with "rug burns" and bodily injuries that required medical attention. (*Id.* ¶ 60). Montana would also gesture at Plaintiffs with his handcuffs and flashlight, issuing "veiled threats by suggestion that he could do a lot more to plaintiffs with his power if they 'ever crossed the line.'" (*Id.* ¶ 67).

Montana was also "in charge of assigning 'restrain time' to the plaintiffs," and would offer "to reduce that time" in exchange for sex. (*Id.* ¶ 45). Montana also had access and permission to "utilize physical restraints," which he used "on both plaintiffs almost on a daily basis." (*Id.* ¶ 42). Montana physically assaulted Plaintiffs and "verbally abuse[d] them when he unnecessarily used restraints on them"; Montana called Plaintiffs "his 'bitches.'" (*Id.* ¶ 59). When using physical restraints on Plaintiffs, Montana "would do so in such a manner to physically cause undue pain and suffering to plaintiffs," using "his hands" to "beat" them, which he "seemed to enjoy." (*Id.* ¶¶ 62–63).

Montana "had a close relationship" with Director Tillino, "who allowed Montana to essentially 'run the place.'" (*Id.* ¶ 65). Montana "would have himself assigned to late hour 'suicide watch' duty for plaintiffs," where he would "be in a position of privacy for the purpose of sexual encounters with the plaintiffs." (*Id.* ¶ 54). "Montana was in charge of security cameras and conducted his activity in the 'blind spots' so that" his sexual activity with Plaintiffs "could not be observed or recorded." (*Id.* ¶ 55). Montana's sexual encounters with Plaintiffs took place in their individual cells, the front wing rooms by the gymnasium, the youth counselor's office, the staff lounge, and Director Tillino's office. (*Id.* ¶ 52).

## B.     Defendants Jamie Murphy and Ryan Smith

Plaintiffs allege that Murphy and Smith "used the same grooming process and would [also] sexually and physically assault both plaintiffs." (Dkt. No. 21-1, ¶ 68). They insisted Plaintiffs "call them 'Daddy' and would refer to . . . plaintiffs as their 'princess.'" (*Id.* ¶ 69). Murphy and Smith passed messages to Plaintiffs on scrap paper, where they wrote "explicit and erotic messages" about engaging in sexual acts with Plaintiffs. (*Id.* ¶ 71). Murphy and Smith "brush[ed] up against Plaintiff's [sic] bodies," moved "into a position behind them and grinding their genital area against [Plaintiffs'] buttocks," while commenting "[b]etcha that feels good,

don't it." (*Id.* ¶ 73). Murphy and Smith "exposed themselves to plaintiffs and repeatedly request[ed] that they expose their private parts to them." (*Id.* ¶ 74). When Plaintiffs refused Murphy and Smith's sexual advances, "they became physically abusive" by "pushing them off balance and pushing them into walls." (*Id.* ¶ 75).

### C. Defendants Joseph Aiello and "John" Diego

Plaintiffs acknowledge that Aiello and Diego did not engage in sexual contact with them but allege that these Defendants "used unnecessary force and restraints on the plaintiffs," "press[ed] their knees on plaintiffs' backs and yank[ed] their arms in a violent fashion behind their backs and tightly handcuff[ed] them," "punch[ed] and kick[ed] them," held Plaintiffs "down on the hard floor" and "spit on" them. (Dkt. No. 21-1, ¶¶ 76–80).

### D. Defendant Susan Tillino

Director Tillino, the Site Director at Taberg, supervised Defendants and "personally witnessed the physical assaults but failed to reign in the defendants." (Dkt. No. 21-1, ¶ 85). Tillino gave Defendants "power to do as they wished"—giving them keys and allowing Defendants to make their own hours and to bring in contraband or outside items for Plaintiffs. (*Id.* ¶¶ 83–86). Plaintiffs assert that "the fact they could get away" with "sexual contact and physical abuse" "meant they were being protected by Tillino." (*Id.* ¶ 88).

## III.    STANDARD OF REVIEW

### A. Motion to Amend – Fed. R. Civ. P. 15

In general, leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "Where plaintiffs seek to amend their complaint while a motion to dismiss is pending, a court 'has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion as moot to considering the merits of the motion in light of the amended complaint.'" *Haag v. MVP Health Care*, 866 F. Supp. 2d 137, 140 (N.D.N.Y. 2012) (quoting

*Roller Bearing Co. of Am., Inc. v. Am. Software, Inc.*, 570 F. Supp. 2d 376, 384 (D. Conn. 2008)). Since Defendants have had a full opportunity to respond to the proposed amendments and the primary claims remain the same, the Court considers the merits of the motion to dismiss in light of the proposed amended complaint. If the claims in the proposed amended complaint cannot survive the motion to dismiss, then Plaintiffs' cross-motion to amend will be denied as futile. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) ("An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6).").

### B.    Motion to Dismiss – Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id*. (quoting *Twombly*, 550 U.S. at 555). The court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.    DISCUSSION

### A.    Plaintiffs' Withdrawal of Claims

In moving to amend the complaint, Plaintiffs have dropped OCFS and Taberg as Defendants and have withdrawn their § 1983 First Amendment retaliation, denial of equal protection, and failure to intervene claims. (Dkt. No. 21-2, at 8). Defendants do not oppose this

aspect of Plaintiffs' motion. (Dkt. No. 22, at 8 n.3). Accordingly, the Court grants Plaintiffs'

motion to amend as to the withdrawal of their claims against OCFS and Taberg, and their

withdrawal of their First Amendment retaliation, denial of equal protection, and failure to

intervene claims, and denies Defendants' motion to dismiss these three federal claims as well as

the claims against OCFS as moot.

### B.     Plaintiff D.B.'s § 1983 Claims

#### 1.     Statute of Limitations

Defendants seek partial summary judgment[5] dismissing Plaintiff D.B.'s § 1983 claims as

barred by the statute of limitations. (Dkt. No. 13-7, at 29–31). Their motion is denied as

procedurally deficient. According to the Local Rules, "any motion for summary judgment shall

contain a separate Statement of Material Facts." N.D.N.Y. L.R. 56.1(a). Defendants' motion did

not. Thus, to the extent they move for summary judgment on statute of limitations grounds, it is

denied. *See id.* ("<u>Failure of the moving party to submit an accurate and complete Statement of

Material Facts shall result in a denial of the motion</u>."). However, as the proposed amended

complaint provides D.B.'s birth year, 1998,[6] (Dkt. No. 21-1, at 4), Defendants' statute of

limitations defense may be decided on their Rule 12(b)(6) motion, without resort to documents

outside the complaint. *See Connecticut Gen. Life Ins. Co. v. BioHealth Lab'ys, Inc.*, 988 F.3d

127, 131–32 (2d Cir. 2021) ("Although the statute of limitations is ordinarily an affirmative

---

[5] Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). As Defendants have not met the procedural requirements for a motion for summary judgment, the Court considers their argument under the standard of review applicable to a motion to dismiss under Rule 12(b)(6) and does not set out the summary judgment standard in its entirety.

[6] The documents Defendants filed disclose the month and date of D.B.'s date of birth, but as D.B.'s twenty-first birthday—the date Defendants contend the statute of limitations expired—could have occurred no later than December 31, 2019, and the complaint was filed on September 29, 2020, the month and date of D.B.'s birthday are unnecessary to the determination in this case.

defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." (quoting *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015)).

Defendants assert that when D.B., who was born in 1998, turned eighteen in 2016, she had three years under New York's infancy tolling provision—until 2019—to file her § 1983 claims and that her complaint, filed on September 29, 2020 is barred by the statute of limitations. (Dkt. No. 13-7, at 29–31). Defendants further argue that New York's Child Victims Act ("CVA"), 2019 N.Y. Sess. Laws c. 11, § 3, which amended several provisions of the New York Civil Practice Law and Rules to revive expired claims and extend the statute of limitations for civil claims of sexual abuse committed against minors,[7] is inapplicable to § 1983 claims, (Dkt. No. 13-7, at 29–31). D.B. opposes Defendants' motion and argues that the CVA "explicitly provides for tolling of the statute of limitations for victims of child abuse." (Dkt. No. 21-2, at 19). D.B. was a minor at the time the alleged sexual abuse that forms the basis for her § 1983 claims was committed, thus, in addition to the statute of limitations, the Court must consider the issue of tolling.

As "[s]ection 1983 does not provide a specific statute of limitations," *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013), courts must borrow from "state-law limitations provisions." *Owens v. Okure*, 488 U.S. 235, 239 (1989). While 42 U.S.C. § 1988 "endorses the borrowing of state law limitations provisions" in § 1983 cases, it "offers no guidance as to which state provision to borrow." *Owens*, 488 U.S. at 239. In *Owens*, the Supreme Court addressed "the

---

[7] The CVA, signed into law on 2019, included the revival statute, N.Y. C.P.L.R. § 214-g (reviving statute of limitations for sexual abuse claims that had expired in cases where the abuse was committed against "a child less than eighteen years of age"), and extended time periods for filing civil actions based on sexual abuse, *see, e.g.*, N.Y. C.P.L.R. § 213-c (providing a twenty-year statute of limitations for sexual offenses); N.Y. C.P.L.R. § 208(b) (allowing a plaintiff with a civil claim of sexual abuse committed against her when she was less than eighteen years old to commence an action until she "reaches the age of fifty-five").

question of what limitations period should apply to a § 1983 action where a State has one or more statutes of limitations for certain enumerated intentional torts, and a residual statute for all other personal injury actions." 488 U.S. at 236. There, the plaintiff filed a § 1983 action alleging that the defendant police officers unlawfully arrested, "battered," and beat him, causing physical injury. 488 U.S. at 237. Contending "that § 1983 actions were governed by New York's 1–year statute of limitations covering . . . intentional torts," including false imprisonment, battery, and assault, the defendants moved to dismiss the complaint, "filed 22 months after the alleged incident, as time barred." *Id.* The Court rejected the defendants' argument "that courts should borrow the intentional tort limitations periods because intentional torts are most analogous to § 1983 claims fails" finding that the analogy failed "to recognize the enormous practical disadvantages of such a selection," was "too imprecise," and contravened *Wilson v. Garcia*, 471 U.S. 261 (1985), which "expressly rejected the practice of drawing narrow analogies between § 1983 claims and state causes of action." *Owens*, 488 U.S. 248. The Supreme Court observed that "[i]n marked contrast to the multiplicity of state intentional tort statutes of limitations, every State has one general or residual statute of limitations governing personal injury actions," enabling "[p]otential § 1983 plaintiffs and defendants [to] readily ascertain, with little risk of confusion or unpredictability, the applicable limitations period in advance of filing a § 1983 action." *Id.* It concluded:

> Given that so many claims brought under § 1983 have no precise state-law analog, applying the statute of limitations for the limited category of intentional torts would be inconsistent with § 1983's broad scope. We accordingly hold that where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions.

> The Court of Appeals therefore correctly applied New York's 3–year statute of limitations governing general personal injury actions to [the plaintiff's] claim.

*Id.* at 249–51. The Court, therefore, must apply New York's three-year general statute of limitations for personal injury actions. N.Y. C.P.L.R. § 214(5); *see Lucente v. Cty. of Suffolk*, 980 F.3d 284, 308 (2d Cir. 2020) ("The statute of limitations for § 1983 actions arising in New York is three years." (citing *Owens*, 488 U.S. at 250–51)). Accordingly, the Court turns to tolling.

"The Supreme Court has instructed that in section 1983 actions, we borrow not only a state's limitations period but also its 'tolling rules,' unless applying the state's tolling rules 'would defeat the goals of the federal statute at issue.'" *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) (citations omitted) (first quoting *Board of Regents v. Tomanio*, 446 U.S. 478, 484–86 (1980); and then quoting *Hardin v. Straub*, 490 U.S. 536, 539 (1989)). It is well-settled that in evaluating a § 1983 claim stemming from conduct that occurred when the plaintiff was a minor, courts apply New York's infancy tolling provision, N.Y. C.P.L.R. § 208(a), which provides that the three-year statute of limitations does not begin to run until the plaintiff turns eighteen. *Pearl*, 296 F.3d at 84 ("In the pending case, we clearly borrow New York's rule of tolling during infancy, *see* N.Y. C.P.L.R. § 208 (McKinney 1990), and therefore the statute of limitations ran on Pearl's section 1983 claims on September 29, 1971, three years after his eighteenth birthday.").

Here, D.B. was born in 1998 and was therefore an infant at the time of claim accrual, July 2014 (age 15) to October 2015 (age 16). New York tolling laws provide that the three-year statute of limitations is tolled until a plaintiff reaches eighteen years of age. N.Y. C.P.L.R. § 208(a); *Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 2007) ("Although federal law determines

when a section 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled."). Applying N.Y. C.P.L.R. § 208(a), D.B. had until December 31, 2019, (age 21), at the latest, to file the complaint. The complaint, however, was filed on September 29, 2020, at least nine months after the statute of limitations and tolling period expired. (Dkt. No. 1).

Recognizing this problem, D.B. argues the CVA, specifically, N.Y. C.P.L.R. §§ 213-c, 214-g, and 208(b), renders her claims timely. (Dkt. No. 21-2, at 19). D.B.'s arguments, addressed in turn below, are unavailing.

Section 213-c contains a twenty-year statute of limitation for "conduct constituting certain sexual offenses." But, as discussed, the Supreme Court requires that the Court apply N.Y. C.P.L.R. § 214(5), New York's three-year statute of limitations governing general personal injury actions. *See Owens*, 488 U.S. 248 (noting that the "the practice of drawing narrow analogies between § 1983 claims and state causes of action" for purposes of determining the statute of limitations has been "expressly rejected"). Accordingly, D.B.'s argument regarding § 213-c is without merit.

For the same reason, the Court concludes that D.B.'s argument that the CVA revives her § 1983 claim, also fails. Section 214-g states, in relevant part:

> Every . . . cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense . . . committed against a child less than eighteen years of age, which is barred . . . because the applicable period of limitation has expired, . . . is hereby revived, and action thereon may be commenced not earlier than six months after, and not later than two years and six months after the effective date of this section.

N.Y.C.P.L.R. § 214-g. In *Boyle v. North Salem Central School District*, No. 19-cv-8577, 2020 WL 2319116, at *3, 2020 U.S. Dist. LEXIS 82504, at *8 (S.D.N.Y. May 11, 2020), the court

reached the same conclusion, and rejected the plaintiff's contention that § 214-g applied to revive his otherwise untimely § 1983 sexual abuse claim. D.B. urges the Court to reject "the rationale underlying" *Boyle*, (Dkt. No. 21-2, at 19), but identifies no error in the rationale—nor does the Court perceive one. In *Boyle*, the court adhered to the Supreme Court's instruction in *Owens* and applied New York's three-year "general or residual statute of limitations" to the plaintiff's claim, explaining:

> Although Section 214-g extends the statute of limitations for state law claims respecting child sexual abuse, it does not extend the statute of limitations for Section 1983 claims. This is because "where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." As noted above, in New York, the applicable general or residual statute of limitations applicable to plaintiff's Section 1983 claim is three years.

*Boyle*, 2020 WL 2319116, at *3, 2020 WL 2319116, at *8 (internal citation omitted) (quoting *Anthes v. New York Univ.*, No. 17-cv-2511, 2018 WL 1737540, at *10, 2018 U.S. Dist. LEXIS 53762, at *25 (S.D.N.Y. Mar. 12, 2018)). As discussed, the Supreme Court long ago prohibited the practice of utilizing the statute of limitations of the state tort "most analogous" to the pending § 1983 claim and instructed "courts considering § 1983 claims" to instead "borrow the general or residual statute for personal injury actions," which, in New York is the three-year statute of limitations contained in N.Y. C.P.L.R. § 214(5). *Owens*, 488 U.S. at 248, 250. Accordingly, D.B.'s arguments regarding § 214-g are without merit.

D.B. next argues that even if § 214-g is inapplicable, the CVA's extensive tolling provisions apply. (Dkt. No. 21-2, at 19). In amending the N.Y. C.P.L.R., the CVA amended § 208, which contains New York's infancy and insanity tolling provisions, to add subsection (b), which provides, in relevant part:

> Notwithstanding any provision of law which imposes a period of limitation to the contrary . . . with respect to all civil claims or causes of action brought by any person for . . . injury or condition suffered by such person as a result of conduct which would constitute a sexual offense . . . which conduct was committed against such person who was less than eighteen years of age . . . such action may be commenced, against any party . . . on or before the plaintiff or infant plaintiff reaches the age of fifty-five years.

N.Y. C.P.L.R. § 208(b). D.B. argues that this is a tolling provision and acts to toll her § 1983 sexual abuse claims. (Dkt. No. 22, at 10–13). The Court disagrees. Though it follows subsection a, which is, as discussed, New York's infancy tolling provision, subsection b appears to be a statute of limitations provision—not a tolling provision. N.Y. C.P.L.R. § 208. "[A] statute of limitations creates 'a time limit for suing in a civil case, based on the date when the claim accrued.'" *CTS Corp. v. Waldburger*, 573 U.S. 1, 7 (2014) (quoting Black's Law Dictionary 1546 (9th ed. 2009)). In contrast, tolling "pauses the running of, or tolls, a statute of limitations." *CTS Corp.*, 573 U.S. at 9 (internal quotation marks omitted). Unlike § 208(a), which prevents the three-year statute of limitations from beginning to run until the plaintiff has turned eighteen, § 208(b) allows a plaintiff whose sexual abuse claim accrued while a minor to sue until age fifty-five, after which the claim is barred. The Court therefore concludes that N.Y. C.P.L.R. § 208(b) is a statute of limitations provision. *See also* Child Victims Act, New York Senate Bill No. 2440, N.Y. 242nd Leg. Sess. (2019) (explaining that subsection (b) amends "the statute of limitations in civil actions alleging conduct which would constitute a sexual offense against a child under the age of 18. Under current law, the statute of limitations typically begins to run when the victim turns 18, and the statute of limitations ranges from one year to five years depending on the type of claim being brought. This section, as amended, now permits all civil claims or causes of action brought for . . . a sexual offense . . . up until the victim reaches 55 years of age").

As the Court must apply the state's general personal injury three-year statute of limitations, N.Y. C.P.L.R. § 214(5), the statute of limitations were tolled for infancy under § 208(a) until December 31, 2016, when D.B. turned eighteen, at which point the statute of limitations began to run. They expired three years later, on December 31, 2019. As D.B. filed her § 1983 claims on September 29, 2020, nearly nine months after the statute of limitations expired, they are time-barred. Accordingly, Defendants' motion to dismiss D.B.'s § 1983 claims as time-barred is granted and D.B.'s cross-motion to amend with respect to her § 1983 claims is denied as futile.

### 2. Supplemental Jurisdiction

In their reply, Defendants argue that because D.B.'s state law claims do not form "part of the same 'case or controversy' with any. . . federal claims asserted by co-plaintiff C.P.," in the event D.B.'s § 1983 claims are dismissed, D.B.'s state law claims must also be dismissed for lack of supplemental jurisdiction under 28 U.S.C. § 1367(a). (Dkt. No. 22, at 12). Defendants did not raise this argument in their initial memorandum; they argued only "in the event that all of the federal claims are dismissed, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims." (Dkt. No. 13-7, at 31). Thus, by failing to initially brief it, Defendants "preclud[ed] the plaintiff from offering a meaningful response" to whether the Court should continue to exercise supplemental jurisdiction[8] over D.B.'s state law claims. *Frink Am., Inc. v. Champion Rd. Mach. Ltd.*, 48 F. Supp. 2d 198, 208 (N.D.N.Y. 1999) (quoting *Mercer*

---

[8] D.B.'s § 1983 and state law claims (for, inter alia, assault and battery, harassment, and intentional inflection of emotional distress) undoubtedly arise from "the same 'common nucleus of operative fact'": they all stem from Defendants' alleged sexual and physical abuse of her while she was a juvenile resident at Taberg. *Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 332 (2d Cir. 2011) (explaining that in determining whether claims "form part of the same case or controversy, courts look at whether "the federal claim and state claim . . . stem from the same 'common nucleus of operative fact'" and are "such that the plaintiff 'would ordinarily be expected to try them all in one judicial proceeding.'" (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). Therefore, the Court, at least at the outset of this case, had supplemental jurisdiction over D.B.'s state law claims under § 1367(a).

*Tool Corp. v. Friedr. Dick GmbH*, 179 F.R.D. 391, 398 (E.D.N.Y. 1998)). The Court, therefore, does not consider this argument. *See Morgan v. McElroy*, 981 F. Supp. 873, 876 n.3 (S.D.N.Y. 1997) ("It is well settled in the Second Circuit that a party may not raise an argument for the first time in his reply brief."). However, the question of supplemental jurisdiction over state-law claims must be "consider[ed] and weigh[ed] in each case, at every stage of the litigation." *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 445 (2d Cir. 1998) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Accordingly, the Court grants Defendants leave to renew this argument.

### C. Applicability of Fourth and Fourteenth Amendments to C.P.'s § 1983 Claims[9]

Before addressing the parties' substantive arguments, the Court notes that C.P. asserts her sexual abuse and excessive force claims under the Fourth and Fourteenth Amendments and that the parties assume the applicability of both Amendments in their papers. (Dkt. No. 13-7, at 19–22; Dkt. No. 21-2, at 13–16). It appears, however, that the appropriate standard is the Fourteenth Amendment. According to the proposed amended complaint, OCFS placed C.P. at Taberg, a residential facility, as a "juvenile delinquent." (Dkt. No. 21-1, ¶ 12). The New York Family Court Act provides that: "No adjudication under this article may be denominated a conviction and no person adjudicated a juvenile delinquent shall be denominated a criminal by reason of such adjudication." N.Y. Fam. Ct. Act § 380.1(1). As such, C.P. was "being held in non-criminal custody as [a] juvenile[]." *G.B. ex rel. T.B. v. Carrión*, No. 09-cv-10582, 2012 WL 13071817, at *16, 2012 U.S. Dist. LEXIS 200619, at *63 (S.D.N.Y. Jan. 19, 2012) (citing N.Y. Fam. Ct. Act § 380.1(1)). It therefore appears that the Due Process Clause of the Fourteenth Amendment

---

[9] As Plaintiff D.B.'s § 1983 claims are barred by the statute of limitations, the Court only considers Plaintiff C.P.'s § 1983 claims.

governs C.P.'s sexual abuse and excessive force claims. *See Jackson v. Johnson*, 118 F. Supp. 2d 278, 287 (N.D.N.Y. 2000) (applying Fourteenth Amendment standard to constitutional claims of excessive force in juvenile detention facilities); *G.B.*, 2012 WL 13071817, at *2, 16, 2012 U.S. Dist. LEXIS 200619, at *23, 63–64 (analyzing excessive force claims brought by juveniles placed in "OCFS facilities as a result of juvenile delinquency proceedings in New York State Family Court" under the Fourteenth Amendment); *see also Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims are evaluated under the Due Process Clause because '[p]retrial detainees have not been convicted of a crime and thus may not be punished in any matter—neither cruelly and unusually nor otherwise.'" (quoting *Iqbal v. Hasty*, 490 F.3d 143, 168 (2d Cir. 2007)). As the parties have not addressed this issue, and the parties' arguments are such that this issue it is not outcome-determinative, the Court does not resolve this issue here.

### D.    Substantive Due Process Claims

Defendants Montana, Murphy, Aiello, and Smith move to dismiss C.P.'s substantive due process claims on the grounds that, as alleged, (1) her claims of "sexual assault" and excessive force against Montana, Murphy, and Smith "fail[] to set forth sufficient factual context to render the allegations plausible," and (2) the conclusory excessive force allegations against Aiello "are insufficient to demonstrate . . . personal involvement." (Dkt. No. 13-7, at 19–21). C.P. responds that the proposed amended complaint cures the original complaint's purported lack of specific allegations by adding detailed, "specific acts performed by the individual defendants." (Dkt. No. 21-2, at 13–14).

To allege a violation of substantive due process against a state actor, a plaintiff must allege a deprivation of a "fundamental liberty interest," *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 275 (2d Cir. 2011) (quoting *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)), or "a valid 'property interest' in a constitutionally-protected benefit," *Kaluczky v. City of White Plains*,

57 F.3d 202, 211 (2d Cir. 1995). "The substantive component of due process encompasses, among other things, an individual's right to bodily integrity free from unjustifiable governmental interference." *Lombardi v. Whitman*, 485 F.3d 73, 79 (2d Cir. 2007) (citing *Washington v. Glucksberg*, 521 U.S. 702, 720, (1997)).

"[T]he Due Process Clause 'does not transform every tort committed by a state actor into a constitutional violation.'" *Id.* (quoting *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 202 (1989)). The Due Process Clause is violated "only when [the defendant's conduct] can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Edrei v. Maguire*, 892 F.3d 525, 536 (2d Cir. 2018). With respect to Fourteenth Amendment excessive force claims, the Second Circuit has noted that the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015) elaborates on what is conscience shocking, and that "*Kingsley* provides the appropriate standard." *Edrei*, 892 F.3d at 536–37. "*Kingsley* held that excessiveness is measured objectively and then identified various considerations that inform the ultimate Fourteenth Amendment inquiry: whether the governmental action was rationally related to a legitimate government objective." *Id.* (citing *Kingsley*, 576 U.S. at 397). In short, "*Kingsley* teaches that purposeful, knowing or (perhaps) reckless action that uses an objectively unreasonable degree of force *is* conscience shocking." *Edrei*, 892 F.3d at 536.

### 1.    Sexual Abuse

Defendants assume "for purposes of this motion" that C.P.'s allegations of sexual abuse allege egregious, outrageous action that "shock[s] the contemporary conscience." (*See* Dkt. No. 13-7, at 20 ("Defendants assume for purposes of this motion that allegations of sexual assault, as a general matter, may meet the conscience-shocking standard.")). Indeed, in view of the allegations, that Montana, Murphy, and Smith, employees at Taberg, sexually abused C.P. by

raping her, brushing their genitals against her, and exposing themselves to her while she was

"juvenile resident" at Taberg "on various occasions" from January 2014, when she was 13, to

October 2018, when she was 17, any argument that C.P. failed to state a legally cognizable

substantive due process claim would fail. *See, e.g., JG & PG ex rel. JGIII v. Card*, No. 08-cv-

5668, 2009 WL 2986640, at *2, 6, 2009 U.S. Dist. LEXIS 85372, at *7, 16 (S.D.N.Y. Sept. 17,

2009) (finding that the plaintiffs stated cognizable substantive due process claim where they

alleged that teachers "engaged in inappropriate sexual conduct in front of Plaintiff–Children,

including grabbing each others' breasts and bottoms, massaging each other, exposing themselves

to the students, and carrying on sexually explicit conversations" and "photographed Plaintiff–

Children's private parts"). Instead, Defendants' argument focuses on the purported lack of

specific detail in the complaint and amended complaint—they argue that both C.P. fails to state a

plausible claim for relief because she does not "specify any particular incident" in which she or

Defendants were involved, "the events that occurred on such occasion," or "the specific conduct

in which these Defendants are claimed to have engaged," (Dkt. No. 13-7, at 20), or specify a date

"or even time periods for any claimed incident," (Dkt. No. 22, at 14). This argument is

unavailing.

      "The federal rules continue to require only notice pleading," *Medina v. Whitehead*, No.

13-cv-885, 2014 WL 3697886, at *2, 2014 U.S. Dist. LEXIS 100653, at *5 (D. Conn. July 24,

2014), and "[s]pecific facts are not necessary"; the complainant "need only 'give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*,

551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555). Here, the proposed

amended complaint identifies Defendants Montana, Murphy, and Smith, informs them that C.P.

is asserting substantive due process claims against them on the grounds that on numerous

occasions from 2014 to 2018, while she was a juvenile resident at Taberg: (1) Montana subjected her to violent sexual assaults, including sexual intercourse, blockaded doors to prevent discovery, and covered her mouth to prevent her from screaming, numerous times while she was a juvenile resident at Taberg from 2014 to 2018; and (2) Murphy and Smith subjected her to sexual contact by "grinding their genital area against Plaintiff's [sic] bod[y]," (Dkt. No. 21-1, ¶ 73), and exposing themselves to her, (*id.* ¶¶ 71–72).

While the allegations against Murphy and Smith are identical, specificity as to their individual actions is not required where, as here, the proposed amended complaint identifies them as Taberg employees, and informs them that they are both alleged to have subjected C.P. to sexual abuse while she was a Taberg resident, (*id.* ¶¶ 71–73). *See Buari v. City of New York*, No. 18-cv-12299, 2021 WL 1198371, at \*16, 2021 U.S. Dist. LEXIS 61273, at \*46 (S.D.N.Y. Mar. 30, 2021) (explaining that "specificity as to each NYPD Defendant's individual actions is not required where, as here, the complaint 'give[s] each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests.'" (quoting *Southerland v. N.Y.C. Hous. Auth.*, No. 10-cv-5243, 2010 WL 4916935, at \*2, 2010 U.S. Dist. LEXIS 124716, at \*6 (E.D.N.Y. Nov. 23, 2010)); *Goldring v. Davidson*, No. 18-cv-06201, 2020 WL 1547464, at \*5, 2020 U.S. Dist. LEXIS 57703, at \*15 (S.D.N.Y. Apr. 1, 2020) (finding allegations sufficient where the plaintiff alleged the individual defendants' "positions at [the correctional facility] and their role in the alleged violations").

Moreover, the factual allegations detailing Montana, Murphy, and Smith's alleged conduct, including violent sexual assault leaving rug burns, grinding genitals against C.P., exposing their private parts to C.P., dispel Defendants' assertion that Plaintiff's claims are conclusory. While the proposed amended complaint contains no specific dates, C.P. alleges an

ongoing course of conduct during her placement at Taberg from 2014 to 2018, thus the omission of specific dates does not provide a basis for dismissal. *See, e.g., Medina*, 2014 WL 3697886, at *2, 2014 U.S. Dist. LEXIS 100653, at *5 (rejecting the defendants' argument that the plaintiff's failure to allege, among other things, "the dates on which four inmates attempted to start a fight" or the names of those inmates, in support of his deliberate indifference to safety claim, explaining that notice pleading does not require "[t]he plaintiff . . . to plead the myriad details described by the defendants"). The Court therefore concludes that the proposed amended complaint states a plausible claim for relief under the Fourteenth Amendment in connection with C.P.'s sexual abuse claims against Defendants Montana, Murphy, and Smith.

### 2. Excessive Force

Montana, Murphy, Smith, and Aiello argue that C.P.'s substantive due process excessive force claims must be dismissed as "generalized and conclusory" and lacking in factual context. (Dkt. No. 13-7, at 20). Aiello further argues that the proposed amended complaint fails to allege his personal involvement. (Dkt. No. 22, at 15).

The proposed amended complaint alleges that while using "restraints" on C.P., Montana "used his hands" to beat C.P., (Dkt. No. 21-1, ¶¶ 62–63), and squeezed handcuffs "tighter" on C.P. after "sexual encounter[s]," (*id.* ¶ 64). As to Murphy and Smith, C.P. alleges that they pushed her "off balance" and "into walls" after she verbally rebuffed their sexual advances. (*Id.* ¶ 75). C.P. alleges that Aiello "used unnecessary force and restraints" on her, pressed his knees on C.P.'s back, "yank[ed her] arms in a violent fashion behind [her] back and tightly handcuff[ed] them," punched and kicked her, held her down on a hard floor, and spit on her. (*Id.* ¶¶ 77–80). While these allegations are somewhat indistinct, the allegations against Montana, Murphy, and Smith, read in light of the allegations that these Defendants used force in connection with the sexual conduct they directed toward and sought to elicit from C.P., as well as after she rebuffed

their overtures, not only advise them that she is asserting excessive force claims against them for physically assaulting her while a juvenile resident in their care, but sufficiently allege Defendants knowingly used an objectively unreasonable degree of force. *Edrei*, 892 F.3d at 536. The allegations against Aiello, while lacking a date or setting, or indeed any surrounding circumstances, alleges that Aiello punched and kicked C.P. while she was handcuffed and spit on her. These allegations of force against an already restrained minor, together with the allegation that Aiello spit on her, are sufficient to allege Aiello's personal involvement. *See Tangreti v. Bachmann*, 983 F.3d 609, 612 (2d Cir. 2020) (explaining that in a § 1983 action, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" (quoting *Iqbal*, 556 U.S. at 676). Accordingly, Defendants' motion to dismiss C.P.'s Fourteenth Amendment claims is denied and C.P.'s motion to amend as to her Fourteenth Amendment claims is granted.

### E. Fourth Amendment Excessive Force Claim

Defendants assert C.P.'s Fourth Amendment excessive force claims fail for the same reasons her Fourteenth Amendment claims fail: the allegations are "conclusory and undifferentiated"[10] as to Montana, Murphy, Smith, and Aiello. (Dkt. No. 13-7, at 22). And because, as state above, the Court concludes that the allegations in the proposed amended complaint give these Defendants fair notice of the claims against them and the ground on which they rest, [11] *see supra* Section IV.D., the Court denies Defendants' motion to dismiss C.P.'s Fourth Amendment claims and grants Plaintiff's cross-motion to amend.

---

[10] The parties have not addressed how the traditional Fourth Amendment excessive force analysis applicable to seizures and arrests applies under the circumstance of this case, i.e. to juveniles in custody.

[11] Defendants also suggest that the proposed amended complaint engages in impermissible group pleading. (Dkt. No. 13-7, at 22; Dkt. No. 22, at 16). "It is well-established in this Circuit that plaintiffs cannot simply 'lump' defendants together for pleading purposes." *Canon U.S.A., Inc. v. F & E Trading LLC*, No. 15-cv-6015, 2017 WL 4357339, at *7, 2017 U.S. Dist. LEXIS 160994, at *18 (E.D.N.Y. Sept. 29, 2017) (citing *Ritchie v. Northern Leasing Sys., Inc.*, 14

## F.    Defendant Tillino – Personal Involvement

C.P. asserts she has "adequately pled allegations that would sustain a claim against defendant Tillino, Taberg's Site Director, for supervisory liability" under § 1983. (Dkt. No. 21-2, at 17). As C.P. named Tillino for the first time in the proposed amended complaint, she has not yet appeared in this action, personally or through counsel, and has not been served. (Dkt. No. 22, at 17 n.8). Accordingly, the Court solely reviews the proposed amended complaint for futility. The Second Circuit recently clarified that "there is no special rule for supervisory liability" and explained that "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti*, 983 F.3d at 612 (quoting *Iqbal*, 556 U.S. at 676). The proposed amended complaint contains three specific allegations regarding Tillino: (1) that Tillino gave "keys to the defendants"; (2) that Tillino allowed "the defendants to make their own hours"; and (3) that Tillino "did not stop the defendants from bringing in the contraband/items described in the complaint." (Dkt. No. 21-1, ¶ 86). But these allegations say nothing about Tillino's actions with respect to C.P. Further, the allegation that Tillino "personally witnessed the physical assaults but failed to reign in the defendants," (Dkt. No. 21-1, at 11), lacks any specificity; it is conclusory and thus fails to state a plausible claim for relief. There is therefore no basis for liability against Tillino under § 1983.

---

F. Supp. 3d 229, 236 (S.D.N.Y. 2014)). "[G]roup pleading" violates Fed. R. Civ. P. 8(a)'s requirement that a pleading "give each defendant fair notice of the claims against it." *Holmes v. Allstate Corp.*, No. 11-cv-1543, 2012 WL 627238, at * 22, 2012 U.S. Dist. LEXIS 24883, at *69 (S.D.N.Y. Jan. 27, 2012). Nevertheless, "[n]othing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant." *Ausco Prods., Inc. v. Axle, Inc.*, No. 19-cv-6798, 2020 WL 7028521, at * 2, 2020 U.S. Dist. LEXIS 222771, at *6 (W.D.N.Y. Nov. 30, 2020) (internal quotation marks and citation omitted). Here, the proposed amended complaint alerts Defendants Montana, Murphy, Smith, and Aiello, specifically, that excessive force claims are asserted against them and outlines the conduct in which they are alleged to have engaged. (Dkt. No. 21-1, ¶¶ 38–67 (Montana), 68–75 (Murphy and Smith), ¶ 76–81 (Aiello)). *Cf. Thomas v. Venditto*, 925 F. Supp. 2d 352, 363 (E.D.N.Y. 2013) (dismissing § 1983 claims for impermissible group pleading, where, "aside from four paragraphs that state where these defendants reside and where they are employed [the defendants were] not mentioned anywhere in the Complaint").

Accordingly, Plaintiffs' cross-motion to amend the complaint to add Tillino as a defendant is denied as futile.[12]

### G. New York State Constitution Claim

In their Seventh Cause of Action, Plaintiffs allege Defendants' "conduct herein denied Plaintiffs the equal protection of the law, discriminated against them and caused injuries, in violation of the New York State Constitution. (Dkt. No. 21-1, ¶¶ 128–29). Defendants seek dismissal of this claim on the grounds that Plaintiffs fail to allege "that they were treated differently" based on their sex and that as Plaintiffs' have "alternative remedies . . . a New York Constitutional claim is not available to them." Plaintiffs apparently overlooked this, as well as Defendants' other substantive arguments, regarding their state law claims because they state in a footnote of their response that their "memorandum does not discuss the state law claims because [Defendants] have not addressed them in a substantive manner." (Dkt. No. 21-2, at 8 n.2).

"The New York State Constitution's . . . equal protection provisions are at least as protective as their federal counterparts," *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 40 (2d Cir. 2018), and "it is well-settled that sexual harassment also violates the Equal Protection Clause," *Lucente*, 980 F.3d at 304 (discussing sexual assault and sexual harassment of female inmates by corrections officer in context of and equal protection claim). However, remedies under the New York State Constitution are "narrow" and the State Constitution "provides a private right of action where remedies are *otherwise unavailable* at common law or under § 1983." *Allen v. Antal*, 665 F. App'x 9, 13 (2d Cir. 2016) (emphasis added) (citing *Brown v. State of New York*, 89 N.Y.2d 172, 192 (1996) (recognizing "narrow remedy" for a constitutional tort claim brought under the State Constitution where a plaintiff otherwise has no available remedy);

---

[12] Tillino is not named in any of the state law causes of action in the proposed amended complaint.

*see also Hollins v. City of New York*, No. 10-cv-1650, 2014 WL 836950, at *14, 2014 U.S. Dist. LEXIS 183076, at *36 (S.D.N.Y. Mar. 3, 2014) ("[C]ourts in the Second Circuit generally agree that New York State Constitution creates no individual liability where § 1983 provides a remedy."). Because alternative remedies are available to both Plaintiffs under § 1983 or common law, Plaintiffs' state constitutional claims are dismissed, and the Court concludes that amendment would be futile. *See Allen*, 665 F. App'x at 13 (affirming dismissal of state constitutional claims "[b]ecause alternative remedies were available under § 1983 and common law").

**H.    New York Civil Rights Law Claim**

In their Seventh Cause of Action, Plaintiffs allege that Defendants' "conduct herein denied Plaintiffs the equal protection of the law, discriminated against them and caused injuries, in violation of the New York Civil Rights Law. (Dkt. No. 21-1, ¶¶ 128–29). Defendants argue that Plaintiffs' New York Civil Rights Law claim must be dismissed for failure to indicate that they provided prior notice to the Attorney General. (Dkt. No. 13-7, at 27–28). Plaintiffs have not responded to this argument.

Although the proposed amended complaint does not refer to a specific section of the New York Civil Rights Law, (*see* Dkt. No. 21-1, ¶ 129), the Court, like Defendants, reads it as asserting a claim under § 40-c, which prohibits discrimination based on sex.[13] (Dkt. No. 13-7, at 27 (citing N.Y. Civ. Rights Law § 40-c)). However, before commencing an action under § 40-c, a plaintiff must comply with § 40-d, which requires that: "notice . . . shall be served upon the attorney general" "[a]t or before the commencement of any action under this section." N.Y. Civ.

---

[13] Section 40-c states that "[a]ll persons" are "entitled to the equal protection of the laws" and "[n]o person shall, because of . . . sex . . . be subjected to any discrimination in his or her civil rights, or to any harassment." N.Y. Civ. Rights Law § 40-c.

Rights Law § 40-d. "New York courts have consistently held that notice to the attorney general is an essential prerequisite to actions for violations of section 40–c." *Sundaram v. Brookhaven Nat'l Labs.*, 424 F. Supp. 2d 545, 571 (E.D.N.Y. 2006) (citing *Giaimo & Vreeburg v. Smith*, 192 A.D.2d 41, 45–46 (2d Dep't 1993)). Neither the summons nor the complaint or proposed amended complaint indicate that Plaintiffs provided notice to the attorney general.[14] Accordingly, absent an indication that notice was provided to the attorney general "[a]t or before the commencement" of this action, Defendants' motion to dismiss is granted, and Plaintiffs' cross-motion to amend is denied as futile. *See id.* (holding that "the plaintiff's claims for violations of section 40–c of the New York Civil Rights Law should be dismissed" for failing to provide notice to the attorney general); *see also Bebry v. ALJAC LLC*, 954 F. Supp. 2d 173, 180 (E.D.N.Y. 2013) (granting motion to dismiss claims for violations of § 40-c where there was "no indication that the Plaintiff served notice of their action on the New York State Attorney General before commencing this action").

## I.     NYSHRL Claim

In their Seventh Cause of Action, Plaintiffs allege that Defendants' "conduct herein denied Plaintiffs the equal protection of the law, discriminated against them and caused injuries, in violation of the . . . New York Human Rights Laws." (Dkt. No. 21-1, ¶¶ 128–29). Defendants seek dismissal of this claims on the ground that as Plaintiffs do not allege principal liability against OCFS, they fail to allege aiding and abetting liability against the individual defendants. (Dkt. No. 13-7, at 27–28). Plaintiffs have not responded to this argument.

---

[14] In support of their motion for partial summary judgment, Defendants submitted the claims Plaintiffs filed with the New York Court of Claims. (Dkt. Nos. 13-3, 13-4). They are noteworthy because they are addressed to the Attorney General of the State of New York and contain notice of allegations of sexual assault. But even assuming these "claims" constitute notice within the meaning of § 40-d, they would not alter the outcome because they were filed on October 7, 2020, *after* Plaintiffs commenced this action. (*See* Dkt. No. 1 (complaint filed Sept. 29, 2020)).

In their initial motion, Defendant OCFS, a state agency, moved to dismiss the claims against it, arguing—correctly—that New York has not waived its Eleventh Amendment immunity against NYSHRL suits for damages in federal court. (Dkt. No. 13-7, at 13).[15] Apparently acknowledging this impediment to suit against the OCFS, Plaintiffs have not named the OCFS as a defendant in the proposed amended complaint. (Dkt. No. 21-1; Dkt. No. 21-2, at 8). They do, however, continue to assert NYSHRL claims against the individual Defendants. (Dkt. No. 21-1, ¶ 129). Defendants argue that the proposed amended complaint's NYSHRL claims are futile because without liability against the principal, the OCFS, "no 'aiding and abetting' cause of action lies. (Dkt. No. 22, at 19–20). "[T]he liability of an employer must be established as a predicate to individual liability for aiding and abetting" under the NYSHRL. *DeFigueroa v. New York*, 403 F.Supp.3d 133, 163 (E.D.N.Y. 2019).

According to the proposed amended complaint, Defendants are employees of both the State of New York and Taberg, which "has been designated by OCFS as a limited secure facility" for juveniles. (Dkt. No. 21-1, ¶¶ 15, 20, 22, 23, 24). To the extent the proposed amended complaint alleges that Defendants aided and abetted OCFS or the state, Plaintiffs fail to state a plausible claim for relief under the NYSHRL for failure to allege liability against the OCFS. *See DeFigueroa,* 403 F. Supp. 3d at 164 (explaining that "Plaintiff must first establish a viable claim of liability against the University under . . . the NYSHRL; only then could she assert claims against Individual Defendants . . . for aiding and abetting violations of the NYSHRL," but that

[15] The Supreme Court has long held that the Eleventh Amendment bars all federal court claims against states, including by the states' own citizens, absent their consent to such suit or an express statutory waiver of immunity. *See, e.g., Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984). State immunity extends not only to the states, but also to state agencies. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf*, 506 U.S. 139, 142–47 (1993); *McGinty v. New York*, 251 F.3d 84, 95 (2d Cir. 2001). And "New York State has not consented to be sued in federal court under the NYSHRL." *Baez v. New York*, 629 F. App'x 116, 118 (2d Cir. 2015) (citing *Pennhurst*, 465 U.S. 89, 99 n. 9 (1984); *Lambert v. N.Y. State Office of Mental Health*, No. 97-cv-1347, 2000 WL 574193, at *7, 2000 U.S. Dist. LEXIS 5197, at *20 (E.D.N.Y. Apr. 24, 2000)). Thus, OCFS is entitled to Eleventh Amendment immunity against suit in federal court under the NYSHRL.

"because the University and New York State are immune from NYSHRL suits under the Eleventh Amendment," the plaintiff's "claims against Individual Defendants under the NYSHRL must be dismissed"). Accordingly, the Court concludes that Defendants are entitled to dismissal of the NYSHRL claims and any amendment to assert claims that the individual Defendants aided and abetted OCFS in violations of the NYSHRL would be futile.[16]

### J.       Remaining State Law Claims

In addition to the above, Plaintiffs assert causes of action for: assault and battery, harassment, intentional and negligent infliction of emotional distress, negligent screening, training, hiring, and retention, negligence, and respondeat superior.[17] (Dkt. No. 21-1, ¶¶ 110–44).

For the same reasons the Court allows the § 1983 sexual and physical abuse claims to proceed, the Court finds that the proposed amendment as to the assault and battery, harassment, and intentional and negligent infliction of emotional distress claims would not be futile. Accordingly, Plaintiffs' cross-motion to amend with respect to these claims is granted.

The negligent screening, training, hiring, and retention, negligence, and respondeat superior claims identify the "State of New York through Taberg" as the responsible party and do not refer to any named Defendant. (*Id.* ¶¶ 123, 121, 139, 143). Plaintiff has withdrawn Taberg as a defendant and the State of New York is not named as a Defendant in this case. And, in any event, to the extent these claims are asserted against the State of New York, they are barred by

---

[16] Defendants argue that Taberg is "not a legal entity in any capacity," and "has no legal existence" (Dkt No. 13-7 at 9, n.1). Thus, it appears any amendment to add Taberg as a principal for purposes of a NYSHRL aiding and abetting claim may be futile.

[17] Defendant OCFS has moved to dismiss these claims to the extent they are asserted against it on grounds of immunity. As Plaintiffs have withdrawn their claims against OCFS, Defendant OCFS's motion is denied as moot. Defendants have not otherwise moved to dismiss those claims.

the Eleventh Amendment. Accordingly, Plaintiffs' cross-motion to amend is denied as futile with respect to these claims.

### K. Leave to Amend

D.B.'s § 1983 claims are barred by the statute of limitations, and there is no reason to believe that better pleading would cure this defect, those claims must therefore be dismissed with prejudice. But because Plaintiffs may be able to cure the above-described defects with better pleading, the Court has provided Plaintiffs with an opportunity to seek leave to file a motion to amend the complaint.

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 13) and Plaintiffs' cross-motion to amend (Dkt. No. 21) are **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that Plaintiffs' claims against Defendants OCFS and Taberg,[18] as well as their § 1983 First Amendment retaliation, denial of equal protection, and failure to intervene claims are deemed withdrawn; and it is further

**ORDERED** that Defendants' motion to dismiss D.B.'s § 1983 claims is **GRANTED**, Plaintiffs' cross-motion to amend as to D.B.'s § 1983 claims is **DENIED** as futile, and D.B.'s § 1983 claims are **DISMISSED with prejudice**; and it is further

**ORDERED** that Plaintiffs' cross-motion to amend the complaint to add Tillino as a defendant is denied as futile; and it is further

**ORDERED** that Defendants' motion to dismiss Plaintiffs' claims under the New York State Constitution, New York Civil Rights, and NYSHRL is granted; Plaintiffs' cross-motion to

---

[18] Taberg has not yet appeared in this action and no attorney has appeared on its behalf.

amend as to their New York State Constitution, New York Civil Rights, and NYSHRL claims is denied as futile, and it is further

**ORDERED** that the New York State Constitution claim is **DISMISSED with prejudice**; and it is further

**ORDERED** that the New York Civil Rights and NYSHRL claims are **DISMISSED without prejudice to repleading**; and it is further

**ORDERED** that Plaintiffs' cross-motion to amend as to their assault and battery, harassment, and intentional and negligent infliction of emotional distress claims is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' cross-motion to amend as to their negligent screening, training, hiring, and retention, negligence, and respondeat superior claims is **DENIED** as futile; and it is further

**ORDERED** that Plaintiffs are directed to file their amended complaint, modified in accordance with this Memorandum-Decision and Order, by July 20, 2021; and it is further

**ORDERED** that the parties are directed to confer on the following issues and file status reports. In their status report due by July 27, 2021, Plaintiffs must indicate (1) whether they seek to file a second motion to amend the complaint with respect to Tillino, the New York Civil Rights Law claims, i.e., whether they can establish prior notice to the Attorney General, and the NYSHRL claims, and if so submit a proposed second amended complaint, and (2) whether Plaintiffs intend to continue this action against Defendant Diego, and if so, whether service has been effected. In their response due by August 10, 2021, Defendant must indicate whether they intend to file a second motion to dismiss and whether they will seek to dismiss D.B.'s state law claims on supplemental jurisdiction grounds. The Court will, if necessary, schedule a telephone

conference to discuss these issues and/or set a briefing schedule once the parties have filed their status reports.

**IT IS SO ORDERED.**

Dated:   July 7, 2021
Syracuse, New York

Brenda K. Sannes
U.S. District Judge